**SPIRIT MASTER FUNDING, LLC,
a Delaware limited liability
company, Plaintiff,**

v.

**PIKE NURSERIES ACQUISITION, LLC,
a Delaware limited liability company;
and Armstrong Garden Centers, Inc. a
California corporation, Defendants.**

**Civil Action No. 1:12–CV–00260–AT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 20, 2012.

Bruce E. Samuels, David D. Garner, Jason M. Porter, Lewis & Roca; Marjorie McCaw Rogers, Michael Hiiliard Schroder, Swift Currie McGhee & Hiers, for Plaintiff.

Jeffrey Ronald Baxter, Nathan Lewis Garroway, McKenna Long & Aldridge, LLP–GA, for Defendants.

### ORDER

AMY TOTENBERG, District Judge.

The Court conducted a telephonic hearing on November 8, 2012, to resolve several discovery disputes between the parties. Subsequent to the hearing the parties submitted supplemental authority, and the sole remaining issue before the Court is whether Plaintiff is entitled to assert the work product privilege over documents prepared by and communications with its non-testifying consulting experts.

## I. BACKGROUND

This case arises out of an alleged breach of certain lease agreements [1] between Spirit Master Funding, LLC and Pike Nursery Holding, LLC as a result of Defendant Pike's alleged failure to comply with all of its obligations under the lease agreements, including Pike's failure to maintain and repair the property and failure to pay rent. (*See* Am. Compl.) According to the Complaint, Plaintiff hired a third-party to inspect the condition of the retail building on the property in September 2005, three years before Defendant Pike took possession of the property. (Am. Compl. ¶ 46.) The inspection revealed that the economic life of the building would extend through 2028. (*Id.*)

In connection with Defendant's efforts to obtain rent concessions from Plaintiff in June 2011, Pike notified Plaintiff on June 15, 2011, that the building's roof had collapsed and had been damaged in a snow and ice storm that had occurred six months earlier in January 2011. (*Id.* ¶¶ 48–49.) Pike hired a professional engineer, Jack Bell, to inspect the condition of the building on July 11, 2011. (*Id.* ¶ 51.) Mr. Bell's July 18, 2011 report found that the "metal roof decking appears to be in poor condition in several locations" and the structural integrity of the building had been compromised. (*Id.*) Plaintiff alleges that rather than make the necessary repairs to the building, Defendant Pike hatched a plan to use the deteriorated condition of the retail building as a means to escape its ongoing obligations under the lease agreements by lobbying the Gwinnett County Department of Planning and Development to condemn the building in late July and August 2011. (*Id.* ¶¶ 52–55.)

On August 18, 2011, prior to an inspection by Gwinnett County, Spirit received notification from Pike that Gwinnett County would be issuing a condemnation notice for the building. (Ex. D to Defendant's Discovery Statement.) The following day on August 19,

---

1. Plaintiff's Amended Complaint also asserts a claim for breach of the implied covenant of good faith and fair dealing.

2011, Spirit informed Pike that it would be unable to agree to the previously requested rent concessions. (Ex. J to Plaintiff's Discovery Statement.) Pike's representative responded on August 20, 2011 as follows: "Too bad You just inherited a mess and lost millions. I will be too busy to do anything with Tucker. Besides the lease was cancelled. You can't lease a retail condemned facility. The federal bankruptcy judge will decide the issue separately from the other leases. So told by our attorney I can't stop it now." (*Id.*)

Gwinnett County inspected the property on August 22, 2011, and "red tagged" the building as "unsafe for occupancy" on August 24, 2011.[2] (*Id.* ¶ 58.) Following the County's inspection of the property, Pike informed Spirit on August 24, 2011, via email that the County condemned the building and required the owner to demolish the building within 60 days. (*Id.* ¶ 62; August 24, 2011 Email.) Pike copied Gary Marsh of the law firm McKenna Long & Aldridge on its email to Spirit. That same day, Spirit retained Bruce Samuels and Matt Burbach of Lewis and Roca LLP to represent Spirit in the dispute with Pike. (Samuels Decl. ¶¶ 2–4.) Plaintiff's counsel sent a letter to Pike on August 24, 2011, notifying Pike that it was in breach of its obligation to repair and maintain the building under the lease agreement. (*Id.* ¶ 4.) On August 29, 2011, counsel for Pike responded by providing notice of its intention to terminate the lease agreement on the grounds that the property had "suffered a Total Condemnation or Casualty." (*Id.* ¶ 5; Am. Compl. ¶ 64.) On September 1, 2011, Spirit's counsel informed Pike that it could not respond to Pike's notice of termination until Spirit had an opportunity to inspect the property. (Ex. I to Defendant's Discovery Statement.)

Mr. Samuels attests that "[b]ased on the parties' positions, [he] anticipated that litigation would ensue." (Samuels Decl. ¶ 6.) Accordingly, Mr. Samuels began researching roofing engineers in late August and hired Ray Ramos of Ramos Engineering to inspect the roof of the building and report his observations to Samuels. (*Id.* ¶¶ 7–9.) Spirit's counsel notified Pike's counsel of an inspection to take place on September 5, 2011, which was subsequently moved to September 13, 2011. (*Id.* ¶¶ 8–9; Exs. I & J to Defendant's Discovery Statement.) Following Ramos' inspection, Mr. Samuels hired Khris Hercules, a structural engineer, on October 20, 2011, to perform a property inspection in connection with his representation of Spirit. (Hercules Decl. ¶ 4.) Mr. Hercules performed the inspection on October 25, 2011. (*Id.*) Spirit also hired several contractors to provide repair estimates for the property. (Ex. N to Defendant's Discovery Statement.)

On December 2, 2011, Spirit sent Pike a pre-suit notice and demand letter notifying Pike that Spirit's engineers had confirmed that the buildings had not been adequately maintained and were in need of repair, attaching Gwinnett County's Compliance Inspection Reports detailing the required repairs, and rejecting Pike's notice of condemnation and/or termination. (Ex. P to Defendant's Discovery Statement.) Spirit concluded the letter as follows:

> Within seven (7) days of your receipt of this letter, please provide Spirit with confirmation of Pike's intention to timely repair the Lawrenceville Property pursuant to the requirements contained in the Compliance Inspection Reports and as required by the Master Lease. To the extent that Pike does not respond to this letter or continues to disregard its obligations under the Master Lease, Spirit will move forward with repairing the property and will seek indemnification from Pike pursuant to the Master Lease. Further, Spirit will consider declaring Pike in default under the entirety of the Master Lease and will consider exercising any rights and remedies under the Master Lease, the Unconditional Guaranty, and applicable law.

(*Id.*) Spirit filed its Complaint in this matter on January 25, 2012. On June 25, 2012, Defendant served its First Request for Pro-

---

**2.** However, the Complaint alleges that in a report dated August 25, 2011, the Chief Building Inspector concluded that the building did not need to be demolished and could be occupied if repaired. (*Id.* ¶ 63.)

duction of Documents on Plaintiff seeking "all documents or communications, including electronic documents, memorializing, evidencing, relating, or referring to any inspection and/or assessment of the Tucker Property or the Buildings performed by any person, from June 15, 2004" and specifically identifying "communications between Spirit and KSI Structural Engineers, including Kris [sic] Hercules, concerning (a) any inspection and/or assessment of the Tucker Property of [sic] the Buildings or (b) any allegations in the Complaint." (Ex. A to Plaintiff's Discovery Statement, RPDs 7 & 9.) Plaintiff objects to the production of documents by and communications with its non-testifying consulting experts on the basis that such information is subject to the work-product privilege.

## II. DISCUSSION

The work product privilege provides a qualified immunity for materials prepared in anticipation of litigation by a party, an attorney, or other representatives of the party. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Two provisions of Federal Rule of Civil Procedure 26 are relevant here: Rule 26(b)(3)(A) governing the limitations on discovering materials prepared in anticipation of litigation and Rule 26(b)(4)(D) governing the limitations on discovery related to non-testifying experts specially retained in anticipation of litigation. Rule 26(b)(3)(A)(ii) protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See* Fed.R.Civ.P. 26(b)(3)(A)(ii). Similarly, Rule 26(b)(4)(D)(ii) protects from disclosure "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial," except where there exist "exceptional circumstances under which it is impracticable for the [requesting]

party to obtain facts or opinions on the same subject by other means." *See* Fed.R.Civ.P. 26(b)(4)(D)(ii).

### A. Shifting Burdens Under Fed.R.Civ.P. 26

 As the party asserting the work product privilege, Plaintiff bears the burden of establishing that the documents it seeks to protect were prepared in anticipation of litigation. *See Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 697 (N.D.Ga.2007); *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir.2006). The work product privilege "must be specifically raised and demonstrated rather than asserted in a blanket fashion." *Carnes*, 244 F.R.D. at 698 (quoting *Yurick ex rel. Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 472 (D.Ariz.2001)). This burden may be satisfied through a detailed privilege log and affidavits from counsel, the party, or the expert, and also by any of the traditional ways in which proof is produced in pretrial proceedings. *See Carnes*, 244 F.R.D. at 698; *In re Oil Refinery*, 132 F.R.D. at 441–442; *Roxworthy*, 457 F.3d at 596–98. Once Plaintiff has shown the application of the work product privilege, the burden shifts to Defendant to demonstrate the existence of exceptional circumstances for the discovery of otherwise privileged documents. *In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D.La.1990), *clarified by* 134 F.R.D. 148 (E.D.La.1990); *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. Partnership*, 154 F.R.D. 202, 207–8 (N.D.Ind.1993); *U.S. v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 338 (W.D.N.Y.1987). Defendant, as the party seeking to show exceptional circumstances under Rule 26(b)(4)(B) carries a heavy burden. *In re Shell Oil Refinery*, 132 F.R.D. at 442; *Hoover v. United States Dep't of the Interior*, 611 F.2d 1132, 1142, n. 13 (5th Cir.1980).

### B. Dual Purpose: Anticipation of Litigation vs. Ordinary Course of Business

 Pike asserts that the documents at issue here, i.e. communications with and reports prepared by consulting experts, were prepared "in the ordinary course of business . . . unrelated to litigation, or for other nonli-

tigation purposes" and are thus not protected by the work product privilege. *See Adams v. City of Montgomery,* 282 F.R.D. 627, 633 (M.D.Ala.2012); *Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650, 654 (S.D.Fla.2009) (citing *CSX Transp., Inc. v. Admiral Ins. Co.,* 1995 WL 855421, at *2 (M.D.Fla. July 20, 1995)); Advisory Committee Notes to Fed. R.Civ.P. 26(b). "It is possible for a witness to wear two hats: one as a specially employed expert in anticipation of litigation and one as an ordinary witness." *Essex Builders Group, Inc. v. Amerisure Ins. Co.,* 235 F.R.D. 703 (M.D.Fl.2006) (citing *In re Shell Oil Refinery,* 134 F.R.D. 148 (E.D.La.1990) (expert employees could be deposed only regarding facts and opinions held prior to being specially employed on a post-accident investigation team that was formed in anticipation of litigation but not as to facts and opinions held after being employed as non-testifying consulting experts to aid in trial preparation)). Thus, "it is admittedly difficult to reduce to a neat general formulation the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine." *Adams,* 282 F.R.D. at 634 (quoting *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir.1981)).

 The Court must thus determine when the contested documents were created, and why the documents were created in assessing the applicability of the work product doctrine. *Fojtasek,* 262 F.R.D. at 654. Courts universally agree that a document whose purpose is to assist in preparation for litigation is within the scope of Rule 26's work product protection. However, as the Second Circuit aptly noted in *U.S. v. Adlman,* "the issue is less clear ... as to documents which, although prepared because of expected litigation, are intended to inform a

business decision influenced by the prospects of litigation." 134 F.3d 1194, 1197–98 (2nd Cir.1998). The *Adlman Court* held that, in light of the plain language of Rule 26 and the policies underlying the work product doctrine [3], where a document is created because of the prospect of litigation it does not lose protection merely because it was also created in order to assist with a business decision. *Id.* at 1199–1202. Accordingly, it is now well recognized that documents that serve a dual purpose are covered by the work product protection if they were produced "with the 'motivating purpose' for or 'because of' anticipated litigation." *Adams,* 282 F.R.D. at 634 (noting that court need not decide whether "motivating purpose" or "because of" tests are consistent or overlapping because the result would be the same under either standard based on the facts before the court); *Fojtasek,* 262 F.R.D. at 654 (citing *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998) for the proposition that "[t]he 'testing question' for the work-product privilege ... is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"); *Regions Fin. Corp. v. U.S.,* No. 2:06–cv–00895–RDP, 2008 WL 2139008, *3–7 (N.D.Ala. May 8, 2008) (Proctor, J.); *Davis,* 636 F.2d at 1040 (stating that "litigation need not necessarily be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation," it receives work product protection) (citing *Osterneck v. E.T. Barwick Ind., Inc.,* 82 F.R.D. 81 (N.D.Ga.1979) (quoting 8 Wright, Miller, And Marcus, Federal Practice & Procedure § 2024 and holding that "the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be

---

**3.** Courts have recognized four interests weighing against allowing an opposing party to depose or call at trial a consultative, non-testifying expert witness: (1) an "important interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' position without fear that every consultation with an expert may yield grist for the adversary's mill," which the court found underlies Fed.R.Civ.P.26(b)(4)(B)'s limitation on discovery of consultative, as opposed to testifying experts;

(2) unfairness of allowing an opposing party to benefit from a party's effort and expense incurred in preparing its case; (3) fear of restraint on the willingness of experts to serve as consultants if their testimony could be compelled; and (4) the substantial risk of "explosive" prejudice stemming from the fact of the prior retention of any expert by the opposing party. *Pickett v. IBP, Inc.,* 2000 U.S. Dist. LEXIS 19500 (M.D.Ala. Oct. 16, 2000) (quoting *House v. Combined Ins. Co. of America,* 168 F.R.D. 236 (N.D.Iowa 1996)).

**686**

said to have been prepared or obtained because of the prospect of litigation.")); *Hermsdorfer v. Am. Motors Corp.,* 96 F.R.D. 13, 15 (W.D.N.Y.1982).

Pike has introduced argument, but no evidence to controvert the affidavits and documents provided by Spirit demonstrating that Messrs. Ramos and Hercules were retained in anticipation of litigation rather than as part of Spirit's ordinary course of business. *See Roxworthy,* 457 F.3d at 597–98. Spirit has submitted the Affidavits of Mr. Samuels and Mr. Hercules both attesting that the experts were retained specifically in anticipation of litigation, along with a detailed timeline surrounding the retention of these experts and the developing dispute between the parties that led to this lawsuit being filed within a few months.[4] The Court finds that Plaintiff's counsel's anticipation that litigation would ensue when he retained Messrs. Ramos and Hercules to investigate the condition of the property was objectively reasonable. Pike had begun copying its lawyers on emails between the parties' representatives and sent the "Too Bad" email on August 19, 2011, threatening that a "federal bankruptcy judge" would sort out the parties' dispute "so told by [its] attorney." *See Roxworthy,* 457 F.3d at 599–600 (finding that party's anticipation of litigation was objectively reasonable where belief was supported by "concrete facts which would likely lead to litigation in mind," where the information was sought to protect "from future litigation about a particular transaction," and/or where the party "face[d] an actual or a potential claim following an actual event or series of events that reasonably could result in litigation.") Therefore, the Court concludes that the consulting experts' investigative findings and opinions provided to Spirit's counsel are protected work product pursuant to Fed. R.Civ.P. 26(b)(4)(D).

■ Even if Spirit retained Ramos and Hercules and their investigations were undertaken in part to assist Spirit in determining Pike's compliance with its lease obli-

gations, the work product privilege does not vanish merely because the communications and reports were created in order to assist with a business decision unless the documents would have been created in essentially similar form irrespective of the litigation. *See Roxworthy,* 457 F.3d at 598; *U.S. v. Adlman,* 134 F.3d 1194, 1202 (2nd Cir.1998); 8 Wright, Miller, And Marcus, Federal Practice & Procedure § 2024, at 512–14 (2012) ("[D]ual purpose documents may be protected even though a nonlitigation purpose can also be ascertained.").

**C. Exceptional Circumstances**

■ Pike asserts that exceptional circumstances exist to justify disclosure of Spirit's communications with and documents prepared by its non-testifying consulting experts retained in anticipation of litigation because the information goes directly to proving its counterclaims against Spirit. According to Pike, Messrs. Ramos and Hercules' knowledge and assessments and communications with Spirit go directly to the issue of Spirit's knowledge and whether Spirit breached its obligations under the lease agreements and acted in bad faith.

■ Rule 26(b)(3) places a twofold burden on the party seeking to overcome the work product privilege and discover protected materials; the requesting party must show both substantial need and undue hardship. *Castle v. Sangamo Weston Inc.,* 744 F.2d 1464, 1467 (11th Cir.1984), (citing *In re International Systems & Controls Corp.,* 693 F.2d 1235, 1240–41 (5th Cir.1982)). Additionally, those parties seeking discovery of facts known or opinions held by consulting experts who are not expected to be called as trial witnesses have the heavy burden of demonstrating the existence of exceptional circumstances. *In re Shell Oil Refinery,* 132 F.R.D. at 442; *Hartford Fire Ins. Co. v. Pure Air on the Lake L.P.,* 154 F.R.D. 202, 207–08. The exceptional circumstances requirement has been interpreted by the courts to mean an inability to obtain equivalent

---

**4.** In addition, Spirit's privilege log expressly includes its communications with Ramos and Hercules as subject to the work product privilege. Thus, there is no basis, and Pike has provided

none, upon which this Court can conclude that documents exist which are not included on this log and over which such privilege has been waived.

information from other sources. *In re Shell Oil Refinery*, 132 F.R.D. at 442 (citing cases); *Hartford Fire Ins. Co. v. Pure Air on the Lake L.P.*, 154 F.R.D. at 208.

Pike is correct that it may discover facts that support its counterclaims or defenses. *See Stern v. O'Quinn*, 253 F.R.D. 663, 685–86 (S.D.Fla.2008) (citing *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518 (S.D.Fla.2002)). Here, Pike seeks fact work product protected under Rule 26(b) to the extent that Pike requests documents generated in the course of Spirit's investigation into the condition of the property by its consulting experts Ramos and Hercules that summarize or otherwise purport to relate factual information obtained during the investigation. Such information differs from mere facts, which are not protected by the work-product doctrine. *See Stern v. O'Quinn*, 253 F.R.D. 663, 685–86 (S.D.Fla. 2008); *AAB Joint Venture v. U.S.*, 75 Fed.Cl. 448, 454 (2007) ("Although the work product privilege protects work product created by the attorney, the privilege does not protect facts contained within or underlying attorney work product.") (citing *In re Unilin Decor N.V.*, 153 Fed.Appx. 726, 728 (Fed.Cir.2005); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995); *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 520–21 (S.D.Fla.2002); *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 515 (D.Minn. 1997); *Phillips Elecs. N. Am. Corp. v. Universal Elecs., Inc.*, 892 F.Supp. 108, 110 (D.Del.1995); *Swarthmore Radiation Oncology v. Lapes*, 155 F.R.D. 90, 92 (E.D.Pa. 1994)); *cf. Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 156 (S.D.Ind.1993) (work product protection "consistently ... held not to prohibit discovery of mere facts") (collecting cases); *cf. Hickman v. Taylor*, 329 U.S. at 513, 67 S.Ct. 385 (discussing pre-Rule

26(b)(3) denial of discovery into what is effectively both opinion and fact work product, and noting that such denial will not "unduly hinder" the petitioner in "the discovery of facts").

██ While underlying facts do not enjoy the protection of the work product doctrine, that does not necessarily mean that Pike is entitled to obtain work product documents and materials that contain facts. When the facts are so intertwined with the mental impressions of the attorney or other work product protected materials, other methods exist for obtaining the factual information without disturbing the work-product protection.[5] *Stern*, 253 F.R.D. at 687 (citing *ECDC Envtl., LC v. New York Marine & Gen. Ins. Co.*, 1998 WL 614478 (S.D.N.Y. June 4, 1998)). "If a document constitutes protected work product, the party possessing the document generally need not produce it—even if the document contains only factual information. However, because the work product privilege does not protect the facts in that document (the privilege protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories." *Id.; see also Casson Constr. Co. v. Armco Steel Corp.*, 91 F.R.D. 376 (D.Kan. 1980). The work product doctrine does not protect factual information from disclosure. Rather, it protects a party only from disclosing particular documents containing the information. To accommodate these principles, a party may propound interrogatories and take depositions to obtain the sought-after factual information. *See* Fed.R.Civ.P. 26(b)(3) Advisory Comm. Note (1970) ("No change is made in the existing doctrine, noted in the *Hickman* case, that one party may discover relevant facts known or available to

---

5. The Court is not persuaded by Pike's implied waiver argument that the work product protection is waived because Spirit's knowledge of the condition of the building by virtue of the experts' investigations is directly at issue in this case. There is no indication that Spirit expressly intends to rely on the specific findings and results of *those* investigations in support of its claims and defenses to Pike's counterclaims. Several experts inspected the property at issue and issued reports documenting the condition of the property which were known by Spirit at the time,

including the Gwinnett County Building Inspector. As Spirit has not designated either Mr. Ramos or Mr. Hercules as testifying experts, it would appear that Spirit does not intend to rely on their reports to support its claims and defenses, but rather intends to rely on these other reports. However, if Spirit ultimately uses or refers to the reports of Mr. Ramos or Mr. Hercules in its presentation of evidence at trial or summary judgment, the Court would consider anew Pike's waiver contention as an appropriate argument.

the other party, even though such facts are contained in a document which is not itself discoverable."). Accordingly, because Pike may discover the facts forming the basis of Spirit's decision to reject Pike's attempted termination of the lease on the basis that the building was condemned by other means, i.e., through interrogatories and depositions of Spirit's representatives who took part in those decisions, Pike has failed to satisfy its heavy burden of establishing substantial burden, undue hardship, and exceptional circumstances warranting disclosure of documents subject to the work product privilege.[6]

## III. CONCLUSION

For the reasons set forth herein, the Court finds that the facts and opinions of Messrs. Ramos and Hercules are protected by the work product privilege and are therefore not subject to discovery. Pike may discover facts from Spirit's representatives regarding its knowledge of the condition of the property and the basis for its conduct regarding the termination of the lease agreements with Pike, either by interrogatories, depositions, or other requests for production not directed toward work product materials.

---

**6.** The Court cannot find that Mr. Hercules waived the work product privilege in light of his sworn statement that he did not disclose any information to Pike's representatives at the time of his inspection as alleged by Pike. Moreover, to the extent such disclosure did in fact occur, the Court finds that any alleged partial disclosure does not extend so far as to effectuate a waiver of the entire subject matter of the investigation. "Due to the sensitive nature of work product materials and the policy behind maintaining their secrecy, generally speaking, when work product protection has been waived, it is 'limited to the information actually disclosed, not subject matter waiver.'" *Stern*, 253 F.R.D. at 683–84 (citing *Continental Casualty Co. v. Under Armour,* *Inc.*, 537 F.Supp.2d 761, 773 (D.Md.2008) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1223 (4th Cir.1976); Epstein, The Attorney–Client Privilege and the Work Product Doctrine 612 (2001) ("[I]nadvertent or even intentional disclosure of work-product documents will not necessarily constitute waiver as to all such documents."); 6 James Wm. Moore, et al., Moore's Federal Practice § 26.70[6][c] (3d ed. 2004) at 26–467 ("A waiver of work-product protection encompasses only the items actually disclosed. Thus disclosure of some documents does not imply that work product protection has been destroyed for other documents of the same character."))).