Yvette CRUZ, Plaintiff,

v.

COACH STORES, INC., Defendant.

No. 96 CIV. 8099(JSR).

United States District Court,
S.D. New York.

Aug. 25, 2000.

---

Peter G. Eikenberry, New York City, for plaintiff.

Lauren Reiter Brody, Rosenman & Colin, New York City, for defendant.

*OPINION*

RAKOFF, District Judge.

The Court recently ordered defendant Coach Stores, Inc. ("Coach") to disclose to plaintiff those portions of its outside investigator's notes of witness interviews prepared in connection with a 1997 "investigative audit" that relate to certain allegations of discrimination, harassment, and/or failure to respond to same. In so doing, the Court overruled defendant's objections to such disclosure premised on attorney-client privilege, work product doctrine, and the so-called "self-critical analysis" privilege. This Opinion states the reasons for the Court's order.

In April 1997, in response to an anonymous letter that alleged that certain Coach employees were receiving "kickbacks" from outside vendors and engaging in racial harassment of certain employees and preferential treatment of others, Coach retained the investigative firm of Norman Jaspan Associates ("Jaspan Associates") to conduct an "investigative audit." *See* Aff. of Carole Sadler, Esq., dated October 7, 1997 ("Sadler Aff.") ¶¶ 2–3; Aff. of Peter Eikenberry, Esq., in Opp. to Def. Mot. to Dismiss, dated April 28, 2000 ("Eikenberry Aff."), Ex. I. At the time, Coach was already defending the instant action and a parallel action, *Brown v. Coach*, 97 Civ. 0463(JSR), *see* Sadler Aff. ¶ 2–3, but Jaspan Associates was unaware of this, *see* Aff. of Norman Jaspan, dated November 12, 1997 ("Jaspan Aff."); Dep. of Herminio Rodriguez, dated January 16, 1998 ("Rodriguez Dep.") at 26.

Between May and July 1997, Jaspan Associates interviewed 15 Coach employees, 10 outside vendors, 1 contract security guard, 1 consultant, and 1 former employee regarding the allegations. Based on these interviews, Jaspan Associates prepared a two-page "Executive Summary," *see* Eikenberry Aff., Ex. J, that concluded, *inter alia*, that a Coach "Facilities Manager" had accepted commercial bribes and engaged in other improper activity, including making "inappropriate sexual remarks to female employees."

Although the Executive Summary bears on its upper right corner the legend "Privileged Attorney–Client Work Product," its confidentiality was seemingly not safeguarded within Coach, for plaintiff's counsel was furnished with a copy shortly after it was prepared. He thereupon sought to use it at a deposition in this case in September 1997. Defendant's counsel objected on grounds of privilege and work-product, *see* Letter of Stacey Creem, Esq. dated October 7, 1997; but upon the representation of plaintiff's counsel that he had lawfully obtained his copy of the Executive Summary from an outside source, *see* letter of Peter Eikenberry, Esq., dated September 29, 1997, the Court overruled the objections. Telephone Conference, October 17, 1997. Pending further developments, however, the Court imposed strict confidentiality restrictions on the disclosure of the document in connection with the instant action. *See* Protective Order, dated Dec. 15, 1997.

On January 28, 1998, plaintiff's counsel amended his prior representation to indicate that he now believed, based on newly obtained information, that his copy of the Executive Summary might have been wrongfully removed from Coach's offices. *See* Letter of Peter Eikenberry, Esq., dated January 28, 1998. Coach, however, took no steps to seek reconsideration of the Court's prior ruling overruling Coach's objections. Furthermore, Coach raised no objection when, in May 1998, Jaspan Associates, notwithstanding the Protective Order entered in this lawsuit (to which Jaspan Associates was not a party), publicly filed a copy of the very same Executive Summary as part of its motion to be dismissed as a party from a separate but closely related lawsuit that plaintiff's counsel had filed in March 1998 on behalf of the instant plaintiff and related plaintiff Brown, accusing Coach, Jaspan Associates, and Sara Lee Corp. of withholding discovery in the instant suit. *See* Ex. J to Aff. of Aff. of Lance Gotko, dated May 7, 1998 ("Gotko Aff."), filed in *Brown v. Sara Lee Corp.*, 98 Civ. 1593(JSR), 1998 WL 809518 (S.D.N.Y. Nov. 19, 1998).

Over the course of the next two years, Coach, though fully aware of Jaspan Associ-

ates' public filing of the Executive Summary, neither sought its sealing by the Court nor raised any objection with Jaspan Associates, Coach's erstwhile agent in the preparation of the document. *See* transcript of 7/13/00, at 55–56. This acquiescence continued even after plaintiff's attorney—beginning in March, 2000 if not earlier—expressly informed Coach of his position that such public filing constituted an independent waiver of any claim of privilege or confidentiality attaching to the Executive Summary. *See id.* at 45, 55–56.

Accordingly, after hearing further argument, the Court ruled on July 13, 2000 that in these circumstances Coach's knowing, voluntary, and unequivocal acquiescence in the public filing of the Executive Summary constituted its waiver of any remaining claim of privilege or confidentiality it might have had with respect to the Executive Summary, that the document could now be used for all purposes, and that it was no longer subject to any protective order. *See id.* at 55–58; confirmed by Order dated July 25, 2000.

Meanwhile, further discovery requests relating to the same subject matter were occasioned by the fact that, even though in November 1998 all of plaintiff's claims in the instant case had been dismissed, *see Cruz v. Coach Stores*, 96 Civ. 8099(JSR), 1998 WL 812045 at *1 (S.D.N.Y. Nov. 18, 1998), in January 2000, the Court of Appeals, while otherwise affirming the dismissals, had reinstated plaintiff's purported hostile work environment claim and had remanded that claim to this Court for further discovery. *See Cruz v. Coach Stores*, 202 F.3d 560, 564 (2d Cir. 2000). On remand, plaintiff's counsel, in addition to seeking to be released from any confidentiality limitations on his use of the Executive Summary itself, sought discovery, *inter alia*, of the Jaspan Associates' interview notes relating to those portions of the Executive Summary that referred to allegations of discrimination, harassment, and failure to respond to same. *See* transcript, 5/12/00, at 10, 33–34. Defendant objected on grounds of attorney-client privilege, work-product doctrine, and self-critical analysis privilege.

Following review of written submissions from both sides, the Court preliminarily ruled that defendant had failed to sustain its burden of establishing the applicability of either the attorney-client privilege or the so-called self-critical analysis privilege to the requested interview notes, but that an *in camera* hearing would be held to assist the Court in determining whether or not the work-product privilege applied to those materials. Telephone Conference, June 19, 2000. This appeared necessary because Carole Sadler, Esq., the in-house General Counsel at Coach who had participated in the decision to retain Jaspan Associates to conduct the investigative audit, had submitted an affidavit stating that the retention was prompted not only by the anonymous letter but also by the pending litigation. *See* Sadler Aff. ¶¶ 2–3.

The *in camera* hearing was duly held on June 20, 2000, with a reporter recording all that occurred but without the presence of plaintiff's counsel and with the record sealed.[1] Sworn testimony was given by Ms. Sadler and by David Degan, the former Jaspan Associates employee in charge of the "investigative audit" who had authored both the Executive Summary and most, if not all, of the interview notes in question and who was now employed by Coach's corporate parent, Sara Lee Corp. Sadler testified that the decision to conduct an investigative audit was a joint decision made by her and her superior, Joseph Sardella, Coach's Chief Administrative officer at the time, in direct response to the anonymous letter. *See* transcript of 6/20/00 ("tr.") at 32–34. She further testified that while she was also personally motivated by the pendency of the instant lawsuit and a related action, neither she nor Sardella made any reference to the lawsuits in outlining to Degen the scope and purpose of the investigation. *See* tr. at 39, 46–48.

Degen, in his testimony, confirmed that neither Sadler nor Sardella mentioned the pending lawsuits in connection with retaining Jaspan Associates, nor did they describe to him those portions of the anonymous letter

alleging discrimination and harassment at Coach. Rather, their discussions centered on the letter's allegations of financial improprieties. *See* tr. at 5–8.

■ Following the hearing, the Court concluded, and now confirms, that all of Coach's objections to disclosure of the interview notes were effectively waived when Coach waived its objection to Jaspan Associates' public filing, and affirmative use, of the Executive Summary in the related litigation. Having allowed its erstwhile agent, Jaspan Associates, to publish the Executive Summary as part of a successful motion to be dismissed from a closely related litigation, Coach may no longer claim privilege with respect to the underlying notes that the Executive Summary purports to summarize.

■ Separately, moreover, Coach's written submissions and the testimony elicited at the *in camera* hearing provide independent bases for denying each of Coach's claims of privilege. The claim of attorney-client privilege fails because, the Court finds, the purpose of the "investigative audit" was not solely, or even primarily, to enable its counsel to render legal advice to Coach. This is evidenced, among other ways, by the fact that that audit was commissioned not only by Coach's General Counsel but by her superior, Coach's Chief Administrative Officer, who promptly acted on its results by removing those employees implicated in financial improprieties; and by the fact that the audit interviews were conducted indiscriminately with Coach employees and non-employees alike. Indeed, nearly half of the interviews conducted were with outside parties, and no attempt was made to differentiate the insiders or make them "sufficiently aware that the they were being questioned in order that the corporation could obtain legal advice". *See Upjohn Company et al. v. United States*, 449 U.S. 383, 394, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *see also Pine Top Insurance v. Alexander & Alexander Services*, 1991 WL 221061 (S.D.N.Y.1991).[2]

---

1. Although the Court ultimately concluded that the requested interview notes would have to be disclosed, the hearing itself necessarily revealed much other information that is unquestionably privileged, and consequently the transcript will remain under seal.

2. In its written submissions, Coach elicited no evidence whatever of any efforts made to apprise

Regarding defendant's work-product claim, the question is whether "in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998), *quoting* Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *8 Federal Practice & Procedure* § 2024, at 343 (1994). While Sadler claimed in her affidavit submitted in connection with Coach's claim of privilege that she initiated the investigation not only "for purposes of advising Coach as to any possible liabilities or obligations with respect to the allegations made in the [anonymous letter]" but "also to obtain any information relating to the [pending] lawsuits" brought by plaintiff and Brown, *see* Sadler Aff. ¶ 6, her testimony, and that of Degan, confirmed that when Sadler and Sardella retained Jaspan Associates and briefed Degan on the scope of the investigation, no mention was made of the pending lawsuits or, for that matter, of any pending litigation. Moreover, as previously noted, Norman Jaspan, the President of Jaspan Associates, in a prior affidavit dated November 17, 1997, averred that he had no "information about plaintiff or this action" and that Jaspan Associates "did not conduct any investigation with respect to plaintiff or this action and does not have any documents involving plaintiff or this action." *See* Jaspan Aff. ¶ 3. These statements were confirmed by Degan at the *in camera* hearing. *See* tr. at 5–7, 24. Indeed, given Degan's total ignorance of the pending lawsuits, as well as of the plaintiffs

and issues implicated therein, it is clear that his interview notes would have been prepared in identical form and substance irrespective of the pending lawsuits. *See Adlman*, 134 F.3d at 1202.[3]

For these reasons, as well as its evaluation of the witnesses' testimony and their demeanor, the Court concludes that Coach has not remotely met its burden of showing that the investigation by Jaspan Associates was prompted by litigation, actual or prospective.

■ As to the so-called "self-critical analysis privilege," the Court is doubtful it should be recognized at all, but certainly not in this case. Privileges are not to be "lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). A company has an obvious economic interest in engaging in self-evaluations of employee misconduct: it hardly needs the additional protection of a shield of privilege to investigate its own employees' alleged derelictions. In this very case, Coach had a strong economic incentive in ascertaining whether its own employees were lining their pockets at the company's expense by taking commercial bribes. The public interest would hardly be served by cloaking the fruits of those inquiries with privilege simply on the ground of encouraging Coach to make an inquiry that it necessarily would have made in any case.

Accordingly, for the foregoing reasons, Coach has failed to carry its burden with respect to its objections to the disclosure of

its employees of the allegedly privileged nature of their interviews. When mention was made of this at the *in camera* hearing, defendant's counsel sought to reopen the issue by recalling Degan to the stand and eliciting testimony that he had told all interviewees, whether outsiders or insiders, that their discussions with him were highly confidential and privileged. *See* tr. 54–55. Degan even claimed (dubious though it seems on its face) that he prefaced his interviews of the outside vendors and other non-employees of Coach with the statement that Ms. Sadler "wanted to preserve the attorney client privilege," *see id.*, even though they were in no way Sadler's clients. Even if this testimony had been reliable, it would not have changed the Court's prior ruling on attorney-client privilege, since it was not only untimely in its production but also failed in its substance to adequately show how any Coach

employee was meaningfully apprised that his or her information was being solicited for the purpose of providing legal advice. But, in any case, the Court declines to credit Degan's belated and convenient testimony on this subject. Specifically, the Court, having observed the manner in which this aspect of Degan's testimony suddenly and belatedly surfaced, the palpably awkward manner in which he delivered this testimony, and the improbability of much of this testimony, finds this portion of Degan's testimony insufficiently reliable to carry defendant's burden.

3. Nor is there any credible evidence to support any claim that Coach anticipated litigation with respect to the financial irregularities that were the primary focus of the investigation.

the aforementioned interview notes on the grounds of attorney-client privilege, work product doctrine, or so called self-critical analysis privilege.