## In re RAYTHEON SECURITIES LITIGATION

No. CIV.A. 99–12142–PBS.

United States District Court,
D. Massachusetts.

Nov. 25, 2003.

**356**

Jeffrey C. Block, Patrick T. Egan, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, Mark C. Gardy, Abbey & Ellis, New York City, Salvatore J. Graziano, Steven G. Schulman, Jared Specthrie, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Charles S. Hellman, Milberg, Welss, Bershad Specthrie & Lerach, New York City, Paul O. Paradis, Wolf Popper LLP, New York City, for Plaintiffs.

Peter M. Casey, Kevin B. Currid, Christian M. Hoffman, Foley Hoag LLP, Eric D. Levin, Jeffrey B. Rudman, Hale & Dorr, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

## I. INTRODUCTION

Lead Plaintiff, the New York State Common Retirement Fund, moves to compel defendant Raytheon Corporation to produce audit opinion letters and other documents prepared by its attorneys, which were submitted to the independent auditor, co-defendant PriceWaterhouse Coopers (PwC), for use in the audit. The Magistrate Judge agreed with Raytheon that these audit opinion letters were protected as attorney work product, held that the work product privilege was not waived, and found that Lead Plaintiff had not demonstrated a substantial need for the documents in question.[1] Plaintiff has filed a timely objection to the Magistrate Judge's order denying the motion. *See* Fed.

R.Civ.P. 72(a); Local Magistrate Rule 2(b). PwC also asserted the work product doctrine on its privilege log, but has not joined in Raytheon's opposition to the motion to compel. After hearing and review of the briefing, this Court orders Raytheon and PwC to submit the documents for *in camera* review.

## II. FACTUAL BACKGROUND

The Court assumes familiarity with its prior opinion in this litigation, available at 157 F.Supp.2d 131 (D.Mass.2001). Essentially, Lead Plaintiff alleges that Raytheon and PwC engaged in a fraudulent scheme that injured purchasers of Raytheon common stock between October 7, 1998, and October 12, 1999. The Second Amended and Consolidated Class Action Complaint ("Complaint") alleges that the defendants Raytheon and PwC issued materially false and misleading financial statements in violation of the Generally Accepted Accounting Principles ("GAAP").

Plaintiff asserts that Raytheon improperly avoided recognizing $93 million in losses on ten inactive completed contracts with Raytheon. The $93 million was booked as revenues in excess of actual client payments to cover cost overruns previously incurred. According to an August 1998 Actionable Asset Memo, these contracts were subject to litigation or alternative dispute resolutions, and plaintiff contends there was no reasonable expectation of a recovery in that amount. For example, Raytheon failed to write off the Saudi Aramco Seawater Project until October 1999 although it was a closed project, it was in arbitration, and the historic relationship with the customer, as well as the contract terms, made recovery improbable.

Plaintiff also alleges that prior to the issuance of its "clean" audit opinion for 1998, PwC was aware that several of Raytheon's contracts, reported as income, were already

---

1. In his Order denying Lead Plaintiff's motion to compel, Magistrate Judge Cohen made several other rulings. First, he rejected Lead Plaintiff's argument that the right to withhold documents on privilege grounds was waived by defendant's intent to rely on an advice of counsel defense, finding that defendant did not intend to rely on such a defense. Second, he denied Lead Plaintiff's claim that *Garner v. Wolfinbarger*, 430 F.2d

1093 (5th Cir.1970) mandates disclosure of all documents set forth in the privilege log. Third, he denied Lead Plaintiff's claim that placing privileged documents under the control of new management destroys the privilege. Finally, he held that Lead Plaintiff had not adequately complied with Local Rule 37.1. I affirm the Magistrate Judge's rulings on these issues for the reasons stated in Court.

embroiled in litigation or arbitration proceedings and that collection was uncertain, not probable.

## III. DISCUSSION

### A. Burden of Proof

█ The party invoking a recognized privilege has the burden of establishing not only the existence of that privilege, but also that the privilege was not waived. *See United States v. Wilson*, 798 F.2d 509, 512–13 (1st Cir.1986); *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.1987) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship."); *In re Pfizer, Inc. Sec. Litig.*, 1993 WL 561125 at *2 (S.D.N.Y. Dec.23, 1993) (holding that party asserting the privilege has the burden of establishing non-waiver of the privilege).

### B. Work Product Doctrine

█ The work product doctrine protects "the files and mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *United States v. Randall*, 194 F.R.D. 369, 373 (D.Mass.1999), *citing Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "The Supreme Court has reaffirmed the strong public policy underlying the work product privilege in the decades since *Hickman*. It has also made clear that documents that tend to reveal the attorney's mental process described by commentators as 'opinion work product' receive special protection not accorded to factual material." *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir.1998) (internal citations omitted). Special treatment for opinion work product is justified because "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), *cited in Adlman*, 134 F.3d at 1197.

Rule 26(b)(3) codifies the principles articulated in *Hickman*. The Rule states that documents "prepared in anticipation of litigation or for trial" are discoverable only upon a showing of substantial need of the materials and inability, without undue hardship, to obtain their substantial equivalent elsewhere. Even where this showing has been made, however, the Rule provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Adlman*, 134 F.3d at 1197.

█ The threshold determination, then, is whether the documents were prepared in "anticipation of litigation." Courts have differed somewhat in construing this term. Under one approach, this determination requires an inquiry into "the primary motivational purpose behind the creation of the document." *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985) (involving documents prepared on behalf of a company at the requirement of its auditors concerning the financial implications of a suit for an annual audit of a financial report). (citation omitted). Under this approach, "[i]f the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated." *Id.*

Under a second approach, the work product doctrine protects a broader category of documents. In *Adlman*, 134 F.3d at 1195, the Second Circuit has held:

> [A] document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions, or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation. Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3).

One leading commentator has concluded that documents should be deemed prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice & Procedure, § 2024 at 343 (1994). This "because of" approach has been adopted in several other circuits. *See In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998) (applying "because of" test and noting that "for a document to meet this standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."); *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976–77 (7th Cir.1996) (applying "because of" test and concluding that insurance claim documents requested by injured worker concerning how insurance company intended to defend against worker's actions were created in anticipation of litigation and subject to work product protection); *Martin v. Bally's Park Place Hotel,* 983 F.2d 1252, 1258 (3d Cir.1993) ("the testing question [for whether documents are protected by the work product doctrine] is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"); *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 984 (4th Cir.1992) (Because "document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation ... materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation") (emphasis in original); *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.1987) (applying "because of" test and concluding that, in contrast to individual case reserve figures calculated by Searle's attorneys, aggregate risk management documents were not prepared in anticipation of litigation but rather constituted business planning documents).

Courts following the more restrictive "primary purpose" approach have held that documents prepared for an independent auditor in connection with a publicly held corporation's efforts to comply with the federal securities laws do not constitute attorney work product because they are created primarily for the business purpose of preparing financial reports that would satisfy the requirements of the federal securities laws. *Gulf Oil Corp.,* 760 F.2d at 297. *See also United States v. El Paso Co.,* 682 F.2d 530, 543–44 (1982) (finding that documents "written ultimately to comply with SEC regulations" were prepared "with an eye on its business needs, not on its legal ones" and do not "contemplate litigation in the sense required to bring it within the work product doctrine"); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* 117 F.R.D. 292, 298 (D.D.C. 1987) (declining to extend work product protection to audit letters prepared by an attorney where Magistrate Judge's *in camera* examination of the letters reveals that they were not prepared to assist company in present or reasonably anticipated litigation but rather to assist accounting firm "in the performance of regular accounting work done by such accounting firms"); *McEwen v. Digitran Sys., Inc.,* 155 F.R.D. 678, 684 (D.Utah 1994) (after reviewing documents *in camera,* concluding that the defendants had not sustained the burden of proof that the documents were protected by the work product privilege because the "primary motivating purpose" behind the creation of the documents appeared to be to enable the re-issuance of defendants's financial statements in order to relist its stock, not to assist attorneys in connection with pending or anticipated litigation).

Other courts have taken a contrary point of view on the ground that the documents were prepared because of litigation. *See Adlman,* 134 F.3d at 1200 (concluding, in dicta, that work product doctrine would protect a memorandum prepared by a company's attorneys at an independent auditor's request "estimating the likelihood of success in litigation and an accompanying analysis of the company's legal strategies and options to

assist it in estimating what should be reserved for litigation losses"); *Tronitech, Inc. v. NCR Corp.*, 108 F.R.D. 655, 656 (S.D.Ind. 1985) (holding that an audit letter is protected by the work product privilege because it arises only in the event of litigation and is comprised of the sum total of the attorney's conclusions and legal theories); *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir.1979) (finding that financial analyses prepared by accountant to assist counsel in assessing client's potential criminal liability were protected by work product doctrine); *In re Pfizer*, 1993 WL 561125 at *3–5 (holding that case-by-case evaluation of company's financial exposure from tort claims qualified for work product protection).

■ However, even when documents were created "because of" litigation, documents that are required to be prepared to comply with the law may not be protected. "In limiting work product to materials prepared 'in anticipation of litigation,' the drafters of Rule 26(b)(3) excluded from the rule's protection '[m]aterials assembled in the ordinary course of business, *or pursuant to public requirements unrelated to litigation,* or for other non-litigation purposes.'" Fed. R.Civ.P. 26(b)(3) Advisory Committee Note (emphasis added), *cited in Martin*, 983 F.2d at 1260–61; *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265–66 (3d Cir.1990) (noting language of advisory committee and directing district court on remand to determine with specificity the party's primary motivation in creating and maintaining the tax accrual document at issue); *see also El Paso*, 682 F.2d at 544 (citing advisory committee notes and concluding that "written ultimately to comply with SEC regulations, the tax pool analysis carries much more the aura of daily business than it does of courtroom combat" and "are not protected work product materials"). This exclusion from work product protection of materials assembled "pursuant to public requirements unrelated to litigation" applies "even if the party is aware that the document may also be useful in the event of litigation." *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F.Supp. 491, 513 (D.N.H.1996) (citations omitted).

■ At issue here are audit opinion letters prepared by an attorney for an independent auditor about pending lawsuits involving the audited company. To the extent the information in these letters must be disclosed in the public financial statements of the company being audited, it is not entitled to work product protection even under the broader "because of litigation" definition of the privilege. However, the Court cannot make this evaluation without a better record. The audit opinion letters should be produced for *in camera* review. In addition, Raytheon, and PwC, shall produce affidavits setting forth the accounting and legal standards governing the treatment of pending or anticipated litigation in financial statements, and supporting any claim of privilege document by document.

## C. Waiver

■ Raytheon points out that some of the documents were prepared in anticipation of litigation, and were then shared with the audit team to assist PwC in its work. Under any definition, these documents are covered by the work product doctrine. Therefore, the Court must determine whether the protection has been waived and whether plaintiff has demonstrated substantial need for the materials.

■ The work product privilege may be waived through disclosure. In *United States v. Amer. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C.Cir.1980), the Court explained the policies underpinning the analysis of waiver of the work product privilege.

[T]he work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. The purpose of the work product privilege is to protect information against *opposing parties*, rather than against *all others* outside a particular confidential relationship, in order to encourage effective trial preparation.... A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents

should be allowed without waiver of the privilege.

*Id.* at 1299 (emphasis added). In determining whether a disclosure is fatally inconsistent with maintaining the privilege, the existence of "common interests" between the transferor and transferee should be considered. *Id.* Most courts have held that disclosure of a document to third persons does not waive the protection unless it has substantially increased the opportunities for potential adversaries to obtain the information. *See* 8 Wright, Miller & Marcus, *Federal Practice and Procedure,* § 2024 (collecting cases); *see also Gutter v. E.I. DuPont de Nemours & Co.,* 1993 WL 2017926, at *5 (S.D.Fla. May 18, 1998) ("Disclosure to outside accountants waives the attorney-client privilege, but not the work-product privilege, since the accountants are not considered a conduit to a potential adversary."); *In re Pfizer,* 1993 WL 561125 at *6 (holding that disclosure to independent auditor is not reasonably viewed as a conduit to a potential adversary); *Samuels v. Mitchell,* 155 F.R.D. 195, 200–01 (N.D.Cal. 1994) (Waiver of the work product privilege occurs, if at all, only if the deliberate disclosure to a third party "substantially increases the opportunity for potential adversaries to obtain the information").

The pivotal question is whether disclosure of documents protected by the work product doctrine to an independent auditor substantially increases the opportunities for potential adversaries to obtain the information. The analysis begins with understanding the role of the independent auditor, which the Supreme Court has described:

> By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a *public* responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to investing public. This "public watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.

*United States v. Arthur Young & Co.,* 465 U.S. 805, 817–18, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). *Cf. United States v. ChevronTexaco,* 241 F.Supp.2d 1065, 1087–88 (N.D.Cal. 2002) (explaining that in contrast to the "public watchdog" function of Arthur Young, "Price Waterhouse was not acting remotely as an *independent* auditor with respect to the challenged transaction"). "[T]he relationship between public accountant and client is at odds with such a guarantee because the public accountant has responsibilities to creditors, stockholders, and the investing public which transcend the relationship with the client." *Diasonics Sec. Litig.,* 1986 WL 53402 at *1 (N.D.Cal. June 15, 1986) (holding that documents disclosed to an accounting firm acting as a public auditor were not entitled to work product protection and when entitled to such protection, the protection was waived by disclosure to the accountants). Auditors have historically played an important role as the principal gatekeepers of corporate governance. *See generally* John C. Coffee, Jr., Professor of Law and Director of the Center on Corporate Governance at Columbia University Law School, *Limited Options,* LEGAL AFFAIRS, Nov.-Dec. (2003) (discussing increase in incentives for gatekeepers of corporate governance to acquiesce in managerial fraud throughout the 1990s).

Plaintiff argues that any disclosure of work product to a public auditor constitutes a waiver because the information was likely to be used in the preparation of public financial reports. However, as the Magistrate Judge points out, there is no evidence that materials disclosed to an independent auditor are likely to be turned over to the company's adversaries except to the extent that the securities laws and/or accounting standards mandate public disclosure.

Again, the record is inadequate for this Court to determine the scope of litigation information an independent auditor or audited company can reasonably be expected to disclose in public financial reports. As Raytheon has the burden of establishing the applicability of the doctrine, the Court orders Raytheon and PwC to produce the documents *in camera* with an affidavit explaining

any claim of privilege and the applicable accounting standards.

### D. Substantial Need

The Magistrate Judge found that Lead Plaintiff had not made a showing of substantial need for the documents protected by the work product doctrine. At this point, the Court declines to address this "substantial need" finding. I agree with the Magistrate Judge that Lead Plaintiff has not met its burden of demonstrating that core work product should be turned over. Once Lead Plaintiff has taken PwC's depositions, it may renew an attempt to show substantial need for the documents, by explaining the specific contract at issue, the alleged fraud in the write-down, and the substantial need for the document. Once I receive this explanation, I will conduct the substantial need analysis during the *in camera* review.

### IV. CONCLUSION

Accordingly, I overrule plaintiff's objections to the Magistrate Judge's order except with respect to the claim of work product protection for certain documents. Raytheon and PwC shall produce these documents for *in camera* review with supporting affidavits within 30 days.