KELLOGG USA, INC., et al., Plaintiffs,

v.

B. FERNÁNDEZ HERMANOS,
INC., et al., Defendants.

Civil No. 07–1213 (GAG/BJM).

United States District Court,
D. Puerto Rico.

April 24, 2009.

PHV Richard P. Steinken, Jenner & Block
LLP, Chicago, IL, Ricardo F. Casellas, Rosa-
lie Irizarry–Silvestrini, Heriberto J. Burgos–
Perez, Manuel A. Pietrantoni, Casellas, Al-
cover & Burgos PSC, San Juan, PR, for
Plaintiffs.

Alfredo Fernandez–Martinez, Miguel G.
Laffitte, Delgado & Fernandez, Hilda L. Qui-

nones–Rivera, Adsuar Muniz Goyco Seda & Perez–Ochoa, PSC, Roberto Lefranc–Morales, Martinez Alvarez, Menendez Cortada & Lefranc Romero PSC, San Juan, PR, for Defendants.

## ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

Defendant's B. Fernández Hermanos, Inc. ("BFH") and Caribbean Warehouse Logistics, Inc. ("CWL")[1] moved to compel the production of documents from plaintiffs Kellogg USA, Inc., and Kellogg Caribbean Services Co., Inc. (collectively "Kellogg"). (Docket No. 179). The court ordered the parties to meet in person to resolve as many disputes as possible, and following that meeting, for plaintiffs to submit to the court justification for the withholding of any documents still in dispute, as well as copies of the documents themselves for the court's in camera inspection. (Docket No. 181). Kellogg responded, submitting a legal memorandum, supporting affidavits, a privilege log, and copies of 169[2] remaining disputed documents for in camera review (the "disputed documents"). (Docket No. 192). BFH replied. (Docket No. 204). This matter was referred to me by the presiding district judge for disposition. (Docket No. 80). After review of the parties' submissions and in camera inspection of the disputed documents, BFH's motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiffs Kellogg Caribbean Services Co., Inc. ("Kellogg Caribbean") and Kellogg USA, Inc. (collectively "Kellogg") bring this action against BFH, CWL, and others seeking to execute a bond posted by defendants in a separate litigation between the parties, styled as *B. Fernandez & Hnos., Inc. v. Kellogg USA*, 05–1030–JP (D.P.R.) (hereinafter, the "Law 75 action"). In that case, BFH complained that Kellogg had unjustly terminated its distribution contract in violation of Puerto Rico Law 75, 10 L.P.R.A. § 278. In the Law 75 action, BFH posted a bond to secure an injunction against Kellogg. The preliminary injunction was later vacated by the First Circuit in a published decision, *B. Fernandez v. Kellogg USA*, 440 F.3d 541, 548 (1st Cir.2006), on the grounds that Kellogg Caribbean, a non-party, satisfied the requirements under Rule 24(a)(2) for intervention as of right.[3] Kellogg now seeks to execute the bond, and also seeks damages in excess of the bond and attorneys' fees in connection with damages, costs, and fees in the Law 75 action.

The documents at issue on this motion concern the events underlying the dispute between the parties in the Law 75 action. Accordingly, it is necessary to consider the facts giving rise to that litigation. Kellogg Caribbean is a Puerto Rico company that promotes, sells, and distributes Kellogg products in Puerto Rico, and a subsidiary of Kellogg Company. *B. Fernandez & HNOS., Inc.*, 516 F.3d at 21. BFH was the Kellogg Company's exclusive agent in Puerto Rico for a number of years until 1992, when BFH entered into a non-exclusive distribution agreement and one year later, when Kellogg Caribbean began to itself market certain Kellogg products in Puerto Rico. *Id.*

---

1. For ease of reference, the court refers to the moving parties collectively as "BFH".

2. Kellogg's memorandum of law indicates that there are 186 disputed documents remaining. However, the privilege log and CD–ROM containing documents for the court's in camera inspection contain 169 documents. Therefore, this decision pertains to those 169 documents made available to the court for in camera review. Moreover, if there are, in fact, additional disputed documents, the court finds that Kellogg has waived its right to withhold those documents and must produce them. *See, e.g., United States v. Wilson*, 798 F.2d 509, 512 (party asserting privilege bears the burden of establishing that privilege applies to contested discovery).

3. On remand, the district court found Kellogg Caribbean an indispensable party whose joinder would destroy diversity, and dismissed the action. *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 472 F.Supp.2d 128 (D.P.R.2006), *aff'd*, 516 F.3d 18, 22 (1st Cir.2008). The action was dismissed without prejudice to being brought in Puerto Rico commonwealth court, although the record in this case does not indicate whether any proceedings were in fact initiated in Puerto Rico court.

In October 2000, Kellogg announced that it had entered into an agreement to acquire Keebler Foods Company ("Keebler"). (Docket No. 192–4, ¶ 4). Around this time, Kellogg was evaluating its sales and distribution systems in Puerto Rico and its relationship with BFH in particular, believing that there may be potential opportunities for improvements in efficiency and effectiveness, particularly because Keebler already had its own extensive distribution network in Puerto Rico. (*Id.*, ¶ 5).

In 2004, Kellogg again engaged in a process of reevaluating its relationship with BFH. (Docket No. 192–2, ¶ 7–8). Kellogg referred to this 2004 undertaking as "Project Harbor," and in July 2004, Kellogg International President John Bryant delivered a presentation to Kellogg's Board of Directors concerning Project Harbor. (Docket No.). Later that year, Kellogg Caribbean informed BFH that it planned to distribute Kellogg products "Cereal in a Cup" and "Fruit Snacks" directly to Puerto Rico retailers, but that BFH would remain the distributor of other Kellogg products. *B. Fernandez & HNOS, Inc.*, 516 F.3d at 21. In response to that decision, BFH commenced the Law 75 proceeding against Kellogg USA. *Id.*

In the instant motion, BFH primarily seeks documents concerning Kellogg's 2001 and 2004 evaluations of its relationship with BFH, including documents concerning the 2004 presentation to the Board of Directors. (Docket No. 179). In support of its opposition, Kellogg submitted affidavits and deposition testimony attesting to the role of counsel in providing legal advice throughout these processes. (Docket Nos. 192–2—192–6).

James Markey attested that from December 2000 through October 2006, he served as Vice President and Chief Counsel, Corporate Governance and International, for the Kellogg Company (Docket No. 192–3, ¶ 1), and Edward Gildea attested that from January 1990 through December 2000 he served as Vice President–Legal for the Kellogg Company, and in 2001 returned to the company to provide legal advice concerning proposed changes to Kellogg's Puerto Rico distribution system. (Docket No. 192–4, ¶ 1). In that capacity, Markey and Gildea worked with Kellogg lawyers and management in 2001 to consider how Law 75 applied to the various options being considered to modify Kellogg's relationship with BFH. (*Id.*, ¶ 7–8; Docket No. 192–3, ¶ 5–6). In particular, Markey and Gildea evaluated potential settlement scenarios for the various options. (Docket Nos. 192–3, ¶ 6; 192–4, ¶ 8).

In 2004, Markey provided legal advice to management when it was again reevaluating the BFH relationship. (Docket No. 192–2, ¶ 7–8). At that time, Kellogg understood that several of the options it was considering "might be objectionable to BFH" and Markey worked with other lawyers and management to evaluate issues such as whether BFH was an exclusive distributor and whether Law 75 applied to the parties' relationship. (*Id.*, ¶ 9). Markey also worked with outside counsel on this matter, including Ricardo Casellas, Thomas Collier, and attorneys with the firm Steptoe and Johnson. (*Id.*). Based on the Law 75 analysis, Markey worked with Kellogg lawyers and management to determine the impact of Law 75 on the various business decisions being considered, as well as potential settlement values should Kellogg decide to pay BFH a fee to modify, restructure, or terminate its distribution rights. (*Id.*, ¶ 10). In addition, Kellogg executive Juan Pablo Villalobos (President of Kellogg Latin America at relevant times) testified that when Kellogg executives evaluated the business models proposed for the modified relationship between Kellogg and BFH, Kellogg's "attorneys were always there." (Docket No. 192–5, p. 2). (*See also id.*, p. 3 (concerning Project Harbor evaluation of business model alternatives, Villalobos "reviewed the results of some of those [evaluations] with the attorneys")).

Markey explained that based on these analyses, he worked with management to prepare a presentation to the Board of Directors concerning their recommendations. (Docket No. 192–2, ¶ 11). Markey's advice principally concerned the potential impact of Law 75 and any litigation that might ensue should BFH object to Kellogg's actions. (*Id.*) Markey stated that Kellogg's standard protocol is that an attorney generally reviews any legal advice contained in any document

or "speaker notes" presented to the Board of Directors. (*Id.*, ¶ 12). Pursuant to this protocol, Markey and other lawyers reviewed and provided legal advice concerning the written materials submitted to the Board of Directors on July 15 and 16, 2004, and the "speaker notes" presented by John Bryant at that meeting. (*Id.*). Markey's affidavit is consistent with the testimony of Bryant, who delivered the Project Harbor presentation to the Board. (Docket No. 192–6, p. 2). Bryant testified that the decision to inform the Board about Project Harbor was "primarily due to litigation risk." (*Id.*, p. 5). Accordingly, Kellogg lawyers were "involved completely" with preparing the presentation. (*Id.*, p. 5). After the Board meeting, Markey continued to provide legal advice to management in its development of "next steps" and for evaluating and implementing Project Harbor. (Docket No. 192–2, ¶ 13).

## ANALYSIS

BFH argues that the disputed documents should be produced because (1) Project Harbor documents are relevant to the claims and counterclaims in this action,[4] and (2) the disputed documents are not privileged because they were not prepared by counsel.[5] (Docket No. 179). Kellogg does not dispute the relevance of the documents, and therefore the court considers only the privilege issue. As to privilege, Kellogg argues that (1) attorney-client privilege protects Project Harbor documents which reflect legal advice because Markey and other attorneys reviewed, consulted in, and directed the process of creating the documents; (2) work product protection applies to Project Harbor documents because they were created in anticipation of potential litigation with BFH; and (3) for similar reasons, attorney-client privilege and work product protection apply to documents concerning Kellogg's initial review of its relationship with BFH in 2001.

### 1. *Legal Standard*

■ Attorney-client privilege attaches to documents where (1) legal advice is sought from (2) a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) were made in confidence (5) by the client, and thus (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor (8) except if the protection has been waived. *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir.2002).

The work product rule, established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified by Federal Rule of Civil Procedure 26(b)(3), protects from discovery materials prepared "in anticipation of litigation" by a party or a party's representative. However, the rule withholds protection for otherwise-privileged documents upon the opposing party's showing of "substantial need" for the materials and an inability to obtain equivalent materials without "undue hardship." Fed.R.Civ.P. 26(b)(3).

■ The phrase "in anticipation of litigation" has been the source of substantial discussion among courts and commentators. The First Circuit adopted the standard applied by a number of other appellate courts holding that documents serving both a litigation and business purpose may be protected work product "if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.' " *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir.2002) (citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998)) (original emphasis). Under this rule, the privilege does not attach to documents that were prepared in the ordinary course of business or that would have been prepared in

---

4. BFH's brief consists in large part of a summary of documents it has reviewed in discovery to date. (*See, e.g.,* Docket No. 179, p. 9–16; 16–19). As best as the court can make sense of BFH's arguments, this discussion is intended to support BFH's relevance argument.

5. Defendants also raise complaints about Kellogg's privilege log, which are mooted by Kellogg's submission of a revised log together with its response. (Docket No. 192–2).

"essentially similar form irrespective of the litigation." *Adlman,* 134 F.3d at 1202.[6]

The work product doctrine extends to protect materials prepared by non-lawyers so long as they are "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3)(A). As the Supreme Court explained,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself. *United States v. Nobles,* 422 U.S. 225, 238–239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

Courts have held that material prepared by accountants, in particular, may be protected by the work product doctrine. *See, e.g., In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir.1979) (protecting financial analyses prepared by accountant to assist counsel in determining client's potential liability); *Evergreen Trading, LLC v. United States,* 80 Fed.Cl. 122, 142 (Fed.Cl.2007) (protecting documents prepared by accountant acting as agent for attorney); *In re Conticommodity Services, Inc., Sec. Litigation,* 123 F.R.D. 574, 577 (N.D.Ill.1988) ("To the extent, however, that Odom [an accountant] was an agent of the customers' attorneys involved in an investigation for purposes of the district court suit, documents he prepared for that purpose are protected by the work product immunity"); *Adlman,* 134 F.3d at 1204 (memorandum prepared by accountant evaluating tax implications of potential merger would be protected by work product doctrine

if it "would not have been prepared but for" anticipated litigation with IRS).

■ As the party asserting the privilege, Kellogg bears the burden of establishing that a privilege applies to the contested documents. *United States v. Wilson,* 798 F.2d 509, 512 (1st Cir.1986); In re *Raytheon Secs. Litig.,* 218 F.R.D. 354, 357 (D.Mass.2003). Rule 26 provides that for documents protected by work product privilege, those documents may be discoverable if the requesting party shows that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R.Civ.P. 26(b)(3)(ii). Additionally, attorney-client privileged documents may be discoverable if the privilege was waived by disclosure to a third-party. *See XYZ Corp. v. United States (In re Keeper of the Records),* 348 F.3d 16, 22 (1st Cir.2003) ("[w]hen otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised"). However, BFH has not shown or even argued that it has a "substantial need" for the documents, and has not raised any arguments of waiver. Therefore, the court's inquiry is limited to whether Kellogg has satisfied its burden of showing that a privilege applies to the withheld documents.

## 2. *The Disputed Documents*

■ A court's in camera inspection of disputed documents "is not to be used as a substitute for a party's obligation to justify its withholding of documents." *Diamond State Ins. Co. v. Rebel Oil Co.,* 157 F.R.D. 691, 700 (D.Nev.1994). Instead, the party asserting the privilege must "provide the court with enough information to enable the court to determine privilege, . . . show[ing] by affidavit that precise facts exist to support the claim of privilege." *Caruso v. Coleman Co.,* 93–CV–6733, 1995 WL 384602, at *1, 1995 U.S. Dist. LEXIS 8914, at *2 (E.D. Pa. June 22, 1995). Accordingly, after giving the

---

**6.** This rule may be in a state of flux in the First Circuit, as the First Circuit's opinion in *United States v. Textron,* 553 F.3d 87 (1st Cir.2009), holding that tax accrual workpapers were protected as dual-purpose documents, was recently withdrawn pending *en banc* review. Order of

Court, *United States v. Textron, Inc.,* No. 07–2631, 2009 WL 775439 (1st Cir. March 25, 2009). Therefore, the court continues to follow the *Maine* decision until an *en banc* decision is rendered.

party "an opportunity to respond ... with a brief and possible supplemental affidavits", if the court finds that the party has "made the requisite showing to invoke the privilege ... the court may then review the materials at issue in camera and decide which, if any, to withhold from disclosure." *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y.1988). However, if the court finds that the threshold burden has not been met, the court may "refuse to engage in [ ] speculation ... to determine which privileges apply to the individual documents ... since the burden of proving the attorney-client or work-product privileges rests on the party claiming the privilege." *Caruso*, 1995 WL 384602, at *1, 1995 U.S. Dist. LEXIS 8914, at *3.

Here, Kellogg submitted affidavits and excerpts of deposition testimony which explained that the disputed documents pertained to the 2001 and 2004 reevaluations of Kellogg's relationship with BFH and of its Puerto Rico distribution models, and which established that (1) Kellogg's attorneys were intimately involved in these processes (Docket Nos. 192–3, ¶ 5–6, 9; 192–4, ¶ 7–8; 192–5, p. 2; 192–6, p. 5); (2) Kellogg (correctly, as it turned out) anticipated that BFH would object to its decision to modify its Puerto Rico distribution model and therefore commence litigation (Docket Nos. 192–3, ¶ 9; 192–4, ¶ 7–8); and, thus, (3) documents evaluating potential Puerto Rico business models were inextricably linked to analyses of litigation and settlement prospects (Docket Nos. 192–3, ¶ 6, 10; 192–4, ¶ 8; 192–6, p. 5). This information therefore provides a context to corroborate certain privilege log entries such that, upon in camera inspection, the court was able to determine that a large number of documents were in fact attorney-client privileged or work-product protected.

■ To be clear, there is no question that documents pertaining to the 2001 reevaluation and to Project Harbor were prepared for both a business purpose and a litigation purpose. These projects were undertaken for the business purposes of increasing Kellogg's efficiency and profitability through modifying its business model. However, Kellogg's submissions make clear that the company understood that these decisions would likely result in litigation and thus involved its attorneys in the process in order to determine the impact of Law 75 of the various business options it was considering as well as to consider how litigation and settlement risks would factor into potential outcomes. (Docket No. 192–3, ¶ 10). In the First Circuit, such dual-purpose documents are protected by work product protection. *Maine*, 298 F.3d at 68 (work product protection applies if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation") (internal citation omitted). In any event, documents containing legal advice are protected by attorney-client privilege whether the legal advice pertains to litigation or to any other legal issue. *Cavallaro*, 284 F.3d at 245.

The court has reviewed Kellogg's privilege log and performed an in camera inspection of the disputed documents. For a number of documents, as indicated in the table below, the court found the privilege log entry sufficient to provide grounds for withholding the document, and confirmed that the privilege designation was warranted through its in camera inspection. For other documents, also indicated in the table below, the privilege log entry was vague or lacked certain details necessary to fully establish privilege, but together with the court's in camera review and Kellogg's submissions, the court was able to determine that the document was indeed privileged. Many of these latter documents are privileged on their face, but the court cautions Kellogg that it should draft its privilege log entries more clearly and comprehensively so that the privilege log entry will itself suffice to provide all necessary facts to establish grounds for the privilege.

The court notes that BFH's assertion that it is "not requesting the disclosure of any document that was authored, or received, by counsel for [Kellogg]" is far from accurate. (Docket No. 179, p. 27). Even after the parties' meet-and-confer, a significant number of documents remaining on the privilege log were clearly authored by or sent to Kel-

logg's counsel.[7] These documents are listed in the table below.

Based on the privilege log entry, Kellogg's submissions, and the court's in camera inspection, the court finds that the following 129 documents are privileged and may continue to be withheld.

| Log Number | Grounds |
| --- | --- |
| 252, 447, 448, 452, 655, 858 | Log entry and redacted document sufficient to show attorney-client privileged communication (redacted portions contain legal advice and/or requests for legal advice) |
| 8, 32 | Log entry sufficient to show attorney-client privileged communication (providing legal advice) |
| 169 | Log entry sufficient to show attorney-client privileged communication (document provided to legal department seeking legal advice) |
| 334, 695, 715, 716, 768, 983, 996 | Log entry sufficient to show attorney-client privileged communication (notes of meeting with counsel reflecting legal advice and/or requests for legal advice) |
| 263, 346, 423, 424, 426, 440, 470, 554, 733, 918, 950, 1024 | Log entry sufficient to show attorney-client privileged communication (contains legal advice and/or requests for legal advice) |
| 974, 977, 1014 | Log entry sufficient to show attorney-client privileged communication (memorandum drafted by counsel providing legal advice) |
| 107, 108, 109, 110 | Log entry sufficient to show attorney-client privileged communication and work product (attorney providing legal advice and analysis in anticipation of litigation) |
| 978, 987, 997, 998 | Upon in camera inspection, analysis of potential settlement options reflecting legal advice from counsel |
| 331 | Upon in camera inspection, document contains a discussion in preparation of a meeting with counsel and for the purpose of seeking legal advice |
| 1011, 1012 | Upon in camera inspection, document contains attorney's handwritten notes reflecting legal advice provided in meeting with management |
| 411, 984, 991, 992 | Upon in camera inspection, document contains notes from meeting with counsel providing legal advice |
| 99, 446, 994 | Upon in camera inspection, document drafted in preparation of a meeting with counsel and for the purpose of seeking legal advice |

| Log Number | Grounds |
| --- | --- |
| 129 | Upon in camera inspection, documents contain analysis of the costs of potential litigation and settlement options, considering Law 75 risks, prepared by outside accountants at the direction of counsel in anticipation of litigation. *See Adlman*, 134 F.3d at 1204. |
| 183, 195, 199, 200, 201, 1004 | Upon in camera inspection, documents contain valuations of BFH's distribution line in order to consider Law 75 impact, prepared by outside accountants at the direction of counsel in anticipation of litigation. *See Adlman*, 134 F.3d at 1204. |
| 541, 739, 748, 750, 752, 944, 960, 961 | Upon in camera inspection, draft agreement reflecting legal advice and/or provided to counsel in request for legal advice |
| 367, 666, 667 | Upon in camera inspection, emails contain legal advice and/or requests for legal advice |
| 224, 963, 964, 975, 976, 1005, 1007, 1010, 1015, 1022, 1027 | Upon in camera inspection, memoranda contain analyses of costs of potential litigation and settlement options, considering Law 75 risks, which reflect the advice of counsel and were prepared in anticipation of litigation |
| 596, 607, 610, 646, 652 | Upon in camera inspection, presentation (and related documents) summarizing potential legal issues created for purpose of seeking legal advice |
| 444 | Upon in camera inspection, presentation regarding BFH distributor relationship and impact of Law 75 reflects legal advice and prepared in anticipation of litigation |
| 60, 61, 101, 112, 222, 415, 425, 483, 484, 485, 486, 488, 490, 499, 505, 510, 520, 527, 692, 943, 946, 947, 948, 956, 957, 958, 973, 988, 989, 1006, 1008, 1009, 1013, 1016, 1031, 1032, 1033, 1034, 1035, 1036 | Upon in camera inspection, presentations (and documents discussing drafting thereof) from 2001 and 2004 contain analyses of the costs of potential litigation and settlement options, considering Law 75 risks, which reflect the advice of counsel and were prepared in anticipation of litigation |
| 456, 457 | Upon in camera inspection, redacted portion of document contains legal advice |
| 999 | Upon in camera inspection, redacted portion of handwritten notes reflect legal advice and written for the purpose of seeking legal advice |
| 953, 1037 | Upon in camera inspection, spreadsheets contain analyses of potential settlement options reflecting advice of counsel and/or prepared in anticipation of litigation |

---

7. It is possible that Kellogg added more detail to the privilege log descriptions of these documents in submitting its revised log to the court. (Docket No. 192–2).

For other documents, the court's review shows that Kellogg has not met its burden of establishing that any privilege applies to these documents. Based on the privilege log entries, Kellogg's submissions, and the court's in camera inspection, the court finds that Kellogg has failed to satisfy its burden of establishing that any privilege applies to the following 39 documents (the "non-privileged documents"). Therefore, the court orders Kellogg to produce the following documents in full, or where indicated, in part.

| Log Number | Grounds |
|---|---|
| 495, 941 | Fails to satisfy burden. Court is unable to identify redacted text, and upon in camera inspection, assertion that document reflects legal advice not confirmed by document contents, which reflect business, not legal, advice and analysis. |
| | These documents should be produced in full, with the exception of the following pages which may be redacted on privilege grounds.<br>(495) 102616<br>(941) 315892A |
| 313 | Fails to satisfy burden. Kellogg fails to establish why analysis reflects legal as opposed to tax or accounting advice, or any other grounds for claiming privilege. |
| 307, 328, 995 | Fails to satisfy burden. Kellogg fails to provide any explanation of grounds for claiming privilege. |
| 335, 338 | Fails to satisfy burden. Kellogg fails to provide any legal support for its assertion that information relating to fees paid to accountants constitutes attorney-client privileged communication. |
| 969 | Fails to satisfy burden. Kellogg fails to provide any legal support for its assertion that bills for legal fees and expenses constitute attorney-client privileged communication. |
| 293, 981, 1041 | Fails to satisfy burden. Kellogg fails to set forth grounds for attorney-client privilege, privilege is not discernable from the face of the document, and Kellogg does not identify any discussion participants as attorneys. |
| 299, 312 | Fails to satisfy burden. Kellogg fails to state whether redline agreement reflects legal advice or was provided to counsel for the purpose of seeking legal advice. |
| 292 | Fails to satisfy burden. Unredacted document not provided to the court; Kellogg fails to set forth grounds for attorney-client privilege and privilege |

| Log Number | Grounds |
|---|---|
| | is not discernable from the face of the document. |
| 460, 466, 480, 481, 482, 500, 501, 764, 939 | Fails to satisfy burden. Upon in camera inspection, assertion that document reflects legal advice not confirmed by document contents, which reflect business, not legal, advice and analysis. |
| 455, 463, 465, 496, 497, 498, 502, 503, 504, 506, 508, 509, 512, 515, 938 | Fails to satisfy burden. Upon in camera inspection, assertion that document reflects legal advice not confirmed by document contents in their entirety. The following pages reflect business, not legal, advice and analysis, and should be produced in unredacted form (all other pages currently produced in redacted form do, upon in camera inspection, reflect legal advice and analysis and may continue to be withheld on privilege grounds):<br>(455) 644169–70, 644173–74<br>(463) 606072A–606080A<br>(465) 102145A–12153A<br>(496) 767A–777A<br>(497) 1477A–1487A<br>(498) 630024A–630034A<br>(502) 98374A–98384A<br>(503) 101527A–101537A<br>(504) 101552A–101562A<br>(506) 644123–644133<br>(508) 62951A–62961A<br>(509) 101527A–101537A<br>(512) 644212–644222<br>(515) 644093–644103<br>(938) 644147–644157 |

## CONCLUSION

For the foregoing reasons, BFH's motion to compel is **GRANTED** in part and **DENIED** in part. Kellogg is ordered to produce the 39 non-privileged documents to BFH no later than **Friday, May 1, 2009**. In addition, if there are additional disputed documents which Kellogg failed to provide to the court or identify in its privilege log, Kellogg is ordered to provide those documents by the same date.