W HOLDING COMPANY, INC.,
et al., Plaintiffs,

v.

CHARTIS INSURANCE COMPANY
OF PUERTO RICO, Defendant;

Federal Deposit Insurance Corporation,
as receiver of Westernbank Puerto
Rico, Plaintiff–Intervenor,

v.

Frank Stipes García, et al., Cross–
Claim Defendants,

Chartis Insurance Company of
Puerto Rico, Previously–
Joined Defendant,

and

Marlene Cruz Caballero, et al.,
Additional Defendants.

Civil No. 11–2271 (GAG/BJM).

United States District Court,
D. Puerto Rico.

Signed Feb. 11, 2014.

Carlos A. Lazaro–Castro, San Juan, PR, PHV Andres Rivero, Rivero Mestre, Coral Gables, FL, for Plaintiffs.

Fernando Sabater–Clavell, Luis N. Saldana–Roman, Saldana, Carvajal & Velez–Rive, PSC, San Juan, PR, Anjali C. Das, Craig M. Derrig, James K. Thurston, Kimberly E. Rients–Blair, Michael P. Tone, Wilson Elser Moskowitz Edelman & Dicker LLP, Chicago, IL, for Defendant.

John C. Anjier, Mandie E. Landry, Carey L. Menasco, George Denegre, Jr., George Jr. Denegre, James A. Brown, Liskow & Lewis, New Orleans, LA, Larry L. Goodman, Federal Deposit Insurance Corporation, Arlington, VA, Linette Figueroa–Torres, Manuel Fernandez–Bared, Jane P. Van Kirk, Toro, Colon, Mullet, Rivera & Sifre, PSC, San Juan, PR, for Plaintiff–Intervenor.

### ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

Before the court is a motion from the Federal Deposit Insurance Corporation as Receiver for Westernbank ("FDIC–R"), seeking an order to compel testimony regarding Exhibit 1013, a memorandum prepared by Freddy Maldonado to W Holding Company's ("W Holding") Audit Committee. Docket No. 774 ("Mot."). W Holding opposed the motion (Docket No. 809, "Opp."), and FDIC–R replied (Docket No. 823–1, "Reply"). The motion was referred to me for disposition. Docket No. 779. For the reasons that follow, I find that Exhibit 1013 is not privileged work product, and the FDIC–R's motion is **GRANTED.**

### BACKGROUND

Because the document at issue relates to Westernbank's prior cases before the court, a brief discussion of Westernbank's recent litigation history is necessary. In the first half of 2007, Westernbank, suspecting that it had been defrauded by one of its borrowers, Inyx, Inc., decided to investigate its loan to Inyx and conduct a broader review of the loan portfolio at Westernbank's Business Credit Division. Westernbank hired a law firm, Adsuar Muñiz Goyco Seda & Pérez–Ochoa, P.S.C. ("AMGSP"), and an independent accounting firm, KPMG, to conduct this investigation. In July 2007, Westernbank filed suit against Inyx in this court. A few months later, W Holding's shareholders sued directly and derivatively in two separate actions, alleging that management should have discovered the Inyx fraud and declared the loan impaired earlier than it did. In 2010, Westernbank failed and was taken into receivership by the FDIC. In this current action, the FDIC–R is suing former directors and officers of Westernbank (collectively, "D & Os"), alleging that the D & Os were negligent in the course of making certain loans, including the Inyx loan. (Docket No. 182, "Compl.").

The document at issue, Exhibit 1013, is a memorandum dated August 22, 2008, prepared by Freddy Maldonado, former Chief Financial Officer of Westernbank, and addressed to W Holding's Audit Committee. The memorandum is titled "Management's Conclusion regarding the Impairment Date and Loss of the Inyx Loan and Related Restatement of Prior Period Financial Statements." Docket No. 776–1. The memorandum's stated purpose is "to document said facts and events related to the Inyx loan and to conclude as to the basis and the date when the loan was impaired." *Id.* at 2. Management concluded that "the loan should have been classified as impaired beginning in the fourth quarter of 2005." *Id.* The memorandum was prepared in part by reviewing and incorporating information from reports prepared by AMGSP and KPMG. *Id.* at 3. In Westernbank's prior action against Inyx, the court held that at least one of these KPMG reports was protected by the work product privilege. *See Westernbank P.R. v. Kachkar,* Civ. 07–1606 (ADC/BJM), 2009 WL 530131, at *5 (D.P.R. Feb. 9, 2009).

The memorandum was presented during an August 22, 2008 meeting with the bank's Audit Committee, which was held "for the

sole purpose of discussing the facts and events surrounding the Inyx Loan, to approve management's conclusion as to the basis, the impairment date and related loss" of the loan, and "to approve the restatement of prior year financial statements." Docket No. 776–2, at 2.

## DISCUSSION

The FDIC–R seeks to compel Maldonado's testimony regarding Exhibit 1013. W Holding objects, asserting that the memorandum is protected work product, prepared because of and for use in pending litigation. Opp. 5. The FDIC–R in response argues that because the memorandum was prepared in the ordinary course of business, not for or because of litigation, it does not constitute attorney work product prepared in anticipation of litigation. Mot. 4–5.

■ The work product doctrine, established in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified by Federal Rule of Civil Procedure 26(b)(3), protects from discovery materials prepared "in anticipation of litigation" by a party or a party's representative. However, the rule allows production of otherwise-privileged documents upon the opposing party's showing of "substantial need" for the materials and an inability to obtain equivalent materials without "undue hardship." Fed.R.Civ.P. 26(b)(3). The rule is intended to safeguard the adversarial process by protecting a lawyer's mental impressions, legal analysis, and conclusions from discovery by the opponent. *See United States v. Nobles,* 422 U.S. 225, 237–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United States . v. Textron, Inc.,* 577 F.3d 21, 30 (1st Cir.2009). But the doctrine recognizes the practical realities of litigation, that lawyers sometimes require non-legal assistance in preparing their cases, and thus the rule extends to materials prepared by non-lawyers so long as they are "prepared in anticipation of litigation or for trial" by a party or its representative. Fed.R.Civ.P. 26(b)(3)(A); *Nobles,* 422 U.S. at 238–39, 95 S.Ct. 2160.

■ In the case of dual purpose documents—documents that serve both a litigation and business purpose—work product protection applies "if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.' " *Maine v. U.S. Dep't of the Interior,* 298 F.3d 60, 68 (1st Cir.2002) (citing *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998)) (original emphasis). Litigation does not need to be the primary purpose for which the document was created; the document simply has to be prepared *because of* litigation or the prospect of litigation. *Maine,* 298 F.3d at 68 (rejecting the "primary purpose" test of the Fifth Circuit, which requires that a document be "created primarily for litigation purposes" for the privilege to apply). At the same time, work product protection does not attach to documents that were "prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Id.* at 70. The rule also does not protect from discovery the underlying facts that are embodied in the work product. *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir.1995).

The First Circuit most recently addressed the limits of the work product doctrine in *United States v. Textron, Inc.,* where the IRS sought production of certain tax accrual work papers prepared by accountants and lawyers in Textron's tax department. 577 F.3d 21, 22 (1st Cir.2009). The documents at issue were prepared as part of the company's annual financial reporting process, in compliance with federal securities law, and included estimates of potential legal liability if the IRS decided to challenge certain tax treatments. *Id.* at 22–23. A divided panel affirmed the district court's ruling that the documents were protected work product prepared "because of" the prospect of litigation.[1] Upon rehearing en banc, the First Circuit held that the district court erred, reasoning that because the tax accrual work papers "were independently required by statutory

---

1. Notably, this court's decision in *Westernbank P.R. v. Kachkar,* Civ. 07–1606 (ADC/BJM), 2009 WL 530131 (D.P.R. Feb. 9, 2009) (the KPMG work product decision), relied in part on the *Textron* panel decision, which was subsequently vacated by the en banc court.

and audit requirements," and would have been prepared regardless of the prospect of litigation, they were not "case preparation materials" entitled to work product protection. *Id.* at 26, 28–29.

■ As the party asserting work product privilege, W Holding has the burden of establishing its applicability to the contested document as well as the burden of showing that it has not been waived. *United States v. Wilson,* 798 F.2d 509, 512 (1st Cir.1986); *In re Raytheon Secs. Litig.,* 218 F.R.D. 354, 357 (D.Mass.2003). Neither side has asserted that waiver of the memorandum's work product protection is at issue. Therefore, I will proceed only to examine whether Exhibit 1013 qualifies as work product.

■ Here, a review of the circumstances surrounding Maldonado's memorandum reveals that the document does not merit work product protection. The court first notes that the subject matter of the memorandum is indeed the same facts and events underlying the various suits between Westernbank, its shareholders, and Inyx. And that litigation surrounding the Inyx loan and the improper handling of the loan was ongoing at the time the memorandum was drafted is not in dispute. But the author, stated purpose, and content of the document itself is highly revealing. The memorandum was drafted by Freddy Maldonado, then the Chief Financial Officer of Westernbank and W Holding, and addressed to W Holding's Audit Committee. Maldonado was not and has never been a lawyer. Most of the memorandum is a summary of the facts and events surrounding the Inyx loan, with a discussion of the applicable accounting standards and Management's conclusion that the Inyx loan should have been classified as impaired in the fourth quarter of 2005. *See* Docket No. 776–1. Unlike the tax accrual workpapers in *Textron,* Exhibit 1013 was not statutorily required or required under auditing standards per se, but it is a document intended to inform W Holding's Audit Committee and the Board of Directors of the proper accounting treatment for a failed loan. The question is a close one, but on these facts, I find that the memorandum is more akin to a document prepared in the ordinary course of business, one that would

have been prepared in "essentially similar form irrespective of . . . litigation," *Maine,* 298 F.3d at 70, than a document that was prepared for or "because of" litigation. Because regardless of whether Westernbank decided to sue Inyx for fraud, or whether W Holding's shareholders sued Westernbank's D & Os for negligence, Westernbank had a legal obligation to file public financial statements and to restate its financials when a material misstatement had been made in prior years. 15 U.S.C. §§ 78*l*, 78m; 17 C.F.R. § 210 *et seq.* Moreover, aside from the fact that the subject matter of the document pertains to then-existing litigation, W Holding has not offered specific facts, evidence, or any other proof to show that the memorandum was prepared because of litigation. Indeed, there is no evidence that Exhibit 1013 was part of Westernbank's case preparation materials; rather, the stated purpose of the document is to "document said facts and events related to the Inyx loan and to conclude as to the basis and the date when the loan was impaired." Docket No. 776–1, at 2. Ultimately, W Holding, as the party seeking work product protection, has failed to carry its burden of showing that the privilege applies to Maldonado's memorandum. *Cf. LightGuard Sys., Inc. v. Spot Devices, Inc.,* 281 F.R.D. 593, 602 (D.Nev.2012) (applying the "because of" test and ruling that document created by company's Vice President does not constitute work product where it "explicitly states that it was created for the business purpose 'of reducing the number of constraints on Spot Devices' future designs' ").

The fact that the memorandum incorporates or was prepared in reliance on some other work product, does not affect the above conclusion. First, as a factual matter, it is unclear exactly what Maldonado extracted from the KPMG report. The memorandum states that it "may include" information from the KPMG report, not that it in fact incorporates those portions of the KPMG report that constitute work product. Docket No. 776–1, at 3. Second, merely incorporating information from another work product does not necessarily mean the resulting document also is work product. For one, it may be that

only non-privileged facts contained in the KPMG report were incorporated into the memorandum. *Dabney*, 73 F.3d at 266 (holding that underlying facts contained in a work product are not privileged). And the case cited by W Holding, *Judicial Watch, Inc. v. United States Dep't of Justice*, 800 F.Supp.2d 202 (D.D.C.2011), does not stand for the proposition that incorporation of information from another work product automatically renders the derivative document protected. On the contrary, courts have emphasized that application of the work product doctrine to any document must be based on a fact-specific inquiry of the document itself. *See, e.g., Maine*, 298 F.3d at 68.

The FDIC also argues that any work product protection over the KPMG report was waived by two disclosures of the documents in late 2007. Reply 2–3. As explained in the preceding paragraph, the issue of whether W Holding waived work product production over the KPMG documents is at best marginally relevant to whether Exhibit 1013 constitutes protected work product. And to the extent that Westernbank's disclosures did waive work product protection over the KPMG reports, that finding only strengthens the court's conclusion that Maldonado's memorandum is not protected work product.

Finally, the court's conclusion today is in accordance with the policy rationale behind the work product rule. To find Maldonado's memorandum to be protected work product would mean that any time a corporation finds it made a misstatement in reporting its financials, such internal documents discussing the misstatement would be protected from disclosure because, as W Holding rightly points out, a material misstatement of financial statements is likely to generate litigation. Following this logic, these internal corporate documents would certainly be prepared in anticipation of litigation, simply because they are sure to generate litigation. This outcome cannot be squared with the purpose of the work product doctrine, which is to maintain the sanctity of the adversarial process by preventing opponents from taking advantage of counsel's case preparations. The work product doctrine was not meant to create a zone of privacy for corporate officers, to encourage them to speak freely amongst each other and with their Board when dealing with business issues that may inevitably result in litigation. Accordingly, Exhibit 1013 is not entitled to work product protection.

## CONCLUSION

For the foregoing reasons, the FDIC–R's motion is **GRANTED**.

**IT IS SO ORDERED.**